[No. B169508. Second Dist., Div. Five. Nov. 5, 2004.]

MARIA SUAREZ, as Deputy Commissioner, etc., Plaintiff and Respondent,
v.
OFFICE OF ADMINISTRATIVE HEARINGS, Defendant and Respondent;
JAMES DAVIS BENNETT, Real Party in Interest and Appellant.

COUNSEL

James Davis Bennett, in pro. per., for Real Party in Interest and Appellant.

Bill Lockyer, Attorney General, W. Dean Freeman and Elisa B. Wolfe-Donato, Deputy Attorneys General, for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

OPINION

ARMSTRONG, J.—Appellant James Bennett has a real estate broker's license. In February of 2001, after an audit, the Department of Real Estate (DRE) accused him of fraud in connection with two mortgages. The charges did not arise out of the audit. An amended accusation added charges which did arise out of the audit. They generally concerned record-keeping irregularities in trust accounts, alleging, for instance, that one account showed an overage of $22,575, and that Bennett had violated various regulations by

maintaining separate records which failed to reflect the dates funds were received and deposited, along with other details, by failing to maintain a monthly reconciliation of the separate records with a control record for the trust account, and by failing to advise the parties in writing that he was the owner of the agency holding the escrow.

After the initial accusation was filed, Bennett made a discovery request, seeking a variety of DRE documents. He made another such request after the amended accusation was filed. Among other things, he asked for the DRE's Audit Manual and Enforcement Deputy Manual. The DRE produced some files, but not those manuals.

Bennett brought a motion to compel production of the manuals. He argued that the manuals were relevant because "a good portion of the concerned accusation deals with an alleged violation of trust account record keeping and fund management. This alleged violation was purportedly discovered by [the DRE] during an audit under the guidelines provided by the Department of Real Estate. Thus the specific steps and procedures used by [the DRE] pursuant to the DRE Audit Manual will necessarily affect the outcome of his audit."

The administrative law judge reviewed the manuals in camera, then ordered the majority of pages in each manual disclosed. The DRE challenged that order by filing a petition for writ of mandamus and/or prohibition in the superior court, contending that Bennett's motion was both untimely and nonmeritorious. The DRE argued, inter alia, that the manuals were protected under Evidence Code section 1040.

The DRE supported its petition with declarations from its Chief Auditor, Fa-Chi Lin, and from William Moran, the Assistant Commissioner in charge of the DRE's Enforcement Section and Mortgage Lending Section.

Lin declared that the Audit Manual suggested guidelines, procedures and techniques, but did not contain a list of required steps. He also declared that disclosure of the Audit Manual would compromise the effectiveness of the audit program, and thus consumer safety, explaining that the manual included "red flags," which, if disclosed, could be used to superficially fix a licensee's books and records and avoid detection of violation of the law. Moran's declaration, about the Enforcement Deputy Manual, is similar.

The trial court reviewed the manuals in camera and agreed with the DRE, finding that the manuals were privileged, confidential, and not subject to

discovery, and that the disclosure order was an abuse of discretion. The court found that the manuals "are 'official information.' The manuals contain confidential investigative training materials that describe investigative techniques and game plans for ferreting out violations of law. They include information to help investigators identify 'red flags' and techniques dealing with protection of the public from unscrupulous real estate businesses. If the information in the manuals, or even parts of the manuals, was disclosed to [Bennett] and/or the public in general, it would compromise the effectiveness of the investigations because licensees could devise methods to avoid detection of violations of the law. Disclosure of the manuals, or any part thereof, is against the public interest."

The court further found that "[Bennett] argues that he should be able to obtain the manuals because he needs to find out if the auditor followed the procedures. Under the circumstances of this case, and because the choice of procedures involves discretion based on various factors, it is not necessary to compromise the effectiveness of the DRE investigatory scheme just to depose an auditor regarding the accusation that alleges basic trust account violations. Auditors exercise discretion regarding how to best investigate the specific unique circumstances of a case, and are not required to strictly adhere to the guidance provided by the Audit Manual." The court then cited Lin's declaration to that effect, and concluded that "Thus, there is no 'necessity' to disclose the manual information to [Bennett]. In fact, [Bennett] has not established that the manuals are relevant and admissible in evidence as required by Government Code section 11507.6."[1]

The court also found that all of the Enforcement Deputy Manual and most of the Audit Manual were irrelevant to the issues before the administrative law judge.[2]

On appeal, Bennett contends that the court did not properly weigh the competing interests described in Evidence Code section 1040, subdivision (b)(2), but showed undue concern for the DRE's "training, investigative

---

[1] The trial court also wrote, "The ALJ properly reviewed the manuals to determine what portions, if any, may be discoverable. Given the contents of the manuals, however, this Court cannot discern a rational basis for the ALJ ordering disclosure of the entire manuals, except for a few pages. Even disclosure of just some pages here would tend to allow licensees to evade enforcement actions . . . ." As Bennett reads this statement, the trial court intended to allow discovery of "a few pages." We cannot agree. When the statement is read in the context of the entire order, it is clear that the trial court was describing the administrative order, not making a finding on the merits.

[2] The trial court also agreed with the DRE that Bennett's motion to compel was untimely under Government Code section 11507.7, and found that for that reason, too, the administrative law judge acted in excess of his discretion. On this appeal, Bennett contends that his motion was timely, and that the ruling was in error. Because we conclude that the trial court ruling was correct on another ground, we do not reach that issue.

techniques, and game plans than the public interest in general and . . . due process afforded appellant in particular." He argues that he "has a due process right to the two requested manuals to enable him to check the validity of the way in which the audit was carried out, especially if the auditor is being trained by or if he/she is being influenced by these two manuals in the course of his duties."

We cannot see that these arguments establish that the trial court's findings of fact lacked substantial evidence (*Franz v. Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 135 [181 Cal.Rptr. 732, 642 P.2d 792]), or that the court erred in any question of law. (*Lam v. Bureau of Security & Investigative Services* (1995) 34 Cal.App.4th 29, 36 [40 Cal.Rptr.2d 137].)

Under Evidence Code section 1040 subdivision, "(b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing official information, if the privilege is claimed by a person authorized by the public entity to do so and: [¶] . . . [¶] (2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice . . . ."

The trial court order reveals that the court carefully balanced the public's need for confidentiality with Bennett's need for disclosure. The court found that confidentiality would protect the DRE's ability to investigate and would thus advance the public interest, and also found that Bennett did not need the manuals for his defense. The record supports the conclusions. DRE executives declared that disclosure of the manuals could compromise the DRE's ability to conduct investigations, and further declared that the manuals did not contain a list of required steps, so that disclosure would not enable Bennett to determine the validity of the way in which the audit was carried out.

Further, we see nothing in Bennett's argument which establishes that an attack on the propriety of the audit method would be relevant to his defense on the charges. In the absence of that kind of relevance, only a slight showing of public interest would be necessary to avoid disclosure. The DRE made a significantly stronger showing here.

## Disposition

The judgment is affirmed. Each party to bear its own costs on appeal.

Grignon, Acting P. J., and Mosk, J., concurred.

On December 2, 2004, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied February 16, 2005.